IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ROBERT T. LOZANO,

Petitioner, No. 2: 10-cv-0056 KJN P

vs.

KEN CLARK,

Respondent. ORDER

______________________________/

I. Introduction

Petitioner is a state prisoner proceeding without counsel with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Both parties have consented to the jurisdiction of the undersigned.

Petitioner challenges his 2007 conviction for assault with a firearm (Cal. Penal Code § 245(a)(2)) and personal use of a gun (Cal. Penal Code § 12022.5(a)). Petitioner is serving a sentence of fourteen years.

This action is proceeding on the original petition filed January 7, 2010. Petitioner raises two claims: 1) the trial court erred in refusing to allow him to make a motion to withdraw his plea; and 2) ineffective assistance of counsel.

After carefully considering the record, the undersigned orders the petition denied.

II. Anti-Terrorism and Effective Death Penalty Act ("AEDPA")

In Williams (Terry) v. Taylor, 529 U.S. 362 (2000), the Supreme Court defined the operative review standard in a habeas corpus action brought pursuant to 28 U.S.C. § 2254. Justice O'Connor's opinion for Section II of the opinion constitutes the majority opinion of the court. There is a dichotomy between "contrary to" clearly established law as enunciated by the Supreme Court, and an "unreasonable application of" that law. Id. at 405. "Contrary to" clearly established law applies to two situations: (1) where the state court legal conclusion is opposite that of the Supreme Court on a point of law; or (2) if the state court case is materially indistinguishable from a Supreme Court case, i.e., on point factually, yet the legal result is opposite.

"Unreasonable application" of established law, on the other hand, applies to mixed questions of law and fact, that is the application of law to fact where there are no factually on point Supreme Court cases which mandate the result for the precise factual scenario at issue. Id. at 407-08. It is this prong of the AEDPA standard of review which directs deference be paid to state court decisions. While the deference is not blindly automatic, "the most important point is that an *unreasonable* application of federal law is different from an incorrect application of law....[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 410-11 (emphasis in original). The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19 (2002).

"Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76 (2006) (established law not permitting state sponsored practices to

inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority, in arriving at their decision. Early v. Packer, 537 U.S. 3 (2002). Nevertheless, the state decision cannot be rejected unless the decision itself is contrary to, or an unreasonable application of, established Supreme Court authority. Id. An unreasonable error is one in excess of even a reviewing court's perception that "clear error" has occurred. Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). Moreover, the established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. at 9.

However, where the state courts have not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

When reviewing a state court's summary denial of a claim, the court "looks through" the summary disposition to the last reasoned decision. Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir. 2000).

III. Factual Background

Petitioner plead guilty to the charges. For that reason, the undersigned sets forth the facts of the offense contained in the probation report:

> SPD Report #06-171121 indicates on 5/17/2006, at approximately 1:00 p.m., officers responded to the female victim's residence regarding a reported shooting. Paramedics arrived and gave

> immediate assistance to the victim who had suffered a gunshot wound to her chest. She was transported to the U.C. Davis Medical Center.
>
> The victim's sister was contacted at the scene. She stated her brother, the defendant, is a drug dealer, and a "Garden" gang member. She stated her sister (victim) is a heavy drug user, and that both the victim and defendant reside at the residence. Detectives learned that both the victim and defendant were inside the victim's bedroom with the door closed when gunfire was heard. The victim's boyfriend, who was also in the house, then entered the bedroom and found the victim shot. The victim walked towards the front door and collapsed.
>
> The victim/defendant's mother offered information to the officers that she had previously seen the defendant with a short-barreled handgun, believing it was a .38 caliber. She had told him to remove the gun from the house immediately.
>
> Officers made contact with the victim at the U.C. Davis Medical Center. They asked her who had shot her, and she stated she "did not know." She wanted to "drop it" and would not talk to officers further. However, when officers prepared to leave the room, she indicated she would tell officers what had happened if her brother Luis was in the room with her. Prior to Luis entering the room, the victim asked the officer, "how much time is Robert (the defendant) looking at?" Her brother entered the room and the officer asked her again who had shot her, at which point she stated it was her brother, Robert (defendant). When asked why, she stated, "It just went off" and that it was just an accident, and she did not want her brother to "do life because of me." She did believe that defendant would come after her and kill her because she was talking to the police. The interview was terminated.
>
> Although the defendant had previously been contacted and interviewed at the home where the shooting occurred, he was now the primary subject of interest. He had previously told officers he had called 911 after finding his sister shot. A warrant was subsequently issued for his arrest.
>
> While the defendant remained outstanding, officers made contact with his father, who indicated he had talked to the defendant and asked him if he had shot the victim. Although the defendant did not indicate he had, he had told his father he had "thrown the gun away in Discovery Park."

(Respondent's Lodged Document 6, at 66.)

////

////

IV. Discussion

A. Claim One: Withdrawal of Plea

Petitioner argues that the trial court erred by not permitting him to withdraw his plea. In support of this claim, petitioner argues that after his trial counsel refused to make the motion on his behalf, the trial court erred by failing to allow petitioner to make the motion himself or by appointing new counsel to represent him on the motion to withdraw.

Respondent's answer contains a summary of the background of this claim. After independently reviewing the record, the undersigned finds this summary to be accurate and adopts it below:

> On December 15, 2006, petitioner appeared in court and changed his plea. The parties discussed the anticipated agreement in which petitioner would plead guilty to a lesser related charge of assault with a deadly weapon, § 245(a)(2), and admit that he was personally armed with a firearm, § 12022.5(a)(1), in exchange for an aggregate sentence of 14 years. The agreement contemplated dismissing the other current charges. (RT 4-5.) Petitioner agreed that this was how he wanted to resolve his case. (RT 6.) Petitioner's attorney, Laurence Smith, stated that he had enough time to discuss the elements of the various charges, potential defenses and the consequences of the plea with petitioner. Mr. Smith was satisfied that petitioner understood those issues. (RT 6.)
>
> Petitioner entered his plea of no contest pursuant to People v. West, (1970) 3 Cal.3d 595, in order to avoid the possibility of a more severe sentence. (RT 5, 7, 10-11.) The court reiterated the details of the plea and specifically noted the 14 year state prison term, and petitioner again agreed that he understood. (RT 7.) The trial court explained to petitioner that he had a right to present a defense, testify on his own behalf and call witnesses in court. (RT 8.) Petitioner stated that he understood those rights. The court further inquired if petitioner had been promised anything not mentioned in court to induce him to enter his plea, and petitioner stated that, other than an opportunity for his sister to speak, he had not been promised anything. Petitioner agreed that he had not been forced in any way to enter his change of plea. Petitioner also agreed that he had enough time to speak with his attorney before entering his change of plea. Petitioner stated that he understood everything that the court was telling him. (RT 9, 11.)
>
> The court specifically found that petitioner entered his change of plea knowingly, intelligently and voluntarily. (RT 11.) Also, the court made it clear that assault with a deadly weapon was a serious

or violent strike offense. Petitioner stated that he understood. (RT 12-13.)

On January 12, 2007, petitioner appeared for judgment and sentence. (RT 15.) Petitioner entered a waiver pursuant to People v. Arbuckle, (1978) 22 Cal.3d 749, so that he could be sentenced by a judge other than the one who took his plea. (RT 15-16.) The petitioner's mother was permitted to make a victim impact statement on behalf of her daughter (the victim) and herself. The statement expressed a lack of understanding about why petitioner would do such a violent thing as shooting his sister point blank in the chest. (RT 16-19.)

The court gave petitioner an opportunity to make a statement. At that point, petitioner contended that his family told him that "it" (presumably the shooting) was an accident. Petitioner further claimed that his attorney told him he would receive less than 14 years. Petitioner continued that he did not want to take the deal and that he wanted to take his plea back and go to trial. Mr. Smith advised the court that they were getting into areas that should not take place on the public record. Mr. Smith added that he did not intend to make a motion to withdraw petitioner's plea. (RT 19.)

The court attempted to proceed to judgment and sentencing, but petitioner interrupted, "I have a right to take back my plea." The court advised petitioner that he needed to speak with his attorney about that, and petitioner complained that he tried but counsel was not listening. The court stated that the record established that he entered his plea voluntarily, and petitioner responded by asking for the other judge. Mr. Smith suggested a second time that these issues should be handled in camera. As a result, the sentencing proceedings were postponed so that petitioner could express his complaints to the court outside of the presence of the prosecutor. (RT 20.)

At the in-camera hearing, petitioner complained that his sister and mother both told him that the shooting was an accident. (Supp RT 4.) Petitioner also complained that he believed that he would not be sentenced to the whole 14 years, but rather, 10 or 12 years. (Supp RT 5.) Petitioner suggested that his sister was lying in some way, and that he could prove it through some unnamed witnesses. (Supp RT 5, 7.) Petitioner also suggested that since the police stopped the victim's boyfriend for questioning, they should have performed a gunshot residue test upon him. (Supp. RT 8-9.)

Mr. Smith responded that petitioner had been initially charged with attempted murder and personal use, and his exposure was in excess of 25 years to life. (Supp RT 5-6.) Mr. Smith explained that the family wanted to avoid trial, and suggested that they were in a "forgiving mood." (Supp RT 6.) Mr. Smith noted that petitioner consistently claimed that he believed that his mother and sister

> would say that the shooting was an accident. However, Mr. Smith stated that he interviewed them both and that petitioner's claimed understanding was false. Mr. Smith pointed to the victim impact statement received by the court just prior to the in camera hearing as evidence that petitioner's claim about his understanding of the facts was wrong. (Supp RT 6.)
>
> Mr. Smith admitted that he told petitioner that if he could convince the probation officer of his contrition, there was a slim (but not very good) chance that the court could impose a lower base term which could lower the sentence to 12 years. Mr. Smith made it abundantly clear that he did not promise such a result to petitioner. Mr. Smith stated that he could see no proper grounds for moving to withdraw the plea to the 14 year deal. (Supp RT 6-7.)
>
> Mr. Smith explained that he discussed the possibility of calling various witnesses at trial including a firearm expert. However, Mr. Smith opined that the only issue in the case was the identity of the person who fired the gun into the chest of the victim, and the victim was prepared to testify that petitioner shot her. (Supp RT 7-8.) Mr. Smith saw no evidence that the victim's boyfriend was the responsible party. Mr. Smith never told petitioner that he would not be permitted to call witnesses at trial. (Supp RT 8.)
>
> The court stated that it had not heard any legal basis for withdrawing the plea. The court continued, "...if any such motion would be entertained by the court, if it was brought by an attorney anyway, but from what I have heard I would make the following findings..." (Supp RT 7.) Before the court could finish its thought, it was interrupted by petitioner. (Supp RT 7.) Later, the court finished its ruling and concluded that Mr. Smith negotiated an excellent resolution" for petitioner. (Supp RT 11.) The court noted petitioner's 25 years-to-life exposure and opined, based upon the probation report, that the evidence against petitioner was "extremely strong." (Supp. RT 12.) The court felt that a 14 year disposition for assault with a deadly weapon was a very generous offer. The court simply did not hear any legal basis for withdrawing petitioner's plea. The court also made factual findings that any conflict between the statements by Mr. Smith and petitioner were resolved in favor of Mr. Smith. The court ruled that it would proceed to sentencing. (Supp. RT 12.) The prosecutor was invited back in for judgment and sentence. (RT 21.)

(Dkt. No. 17, at 5-8 of 10.)

The undersigned presumes that petitioner is raising the same claim as he raised on direct appeal in state court. On direct appeal in state court, petitioner argued that the trial court should have allowed petitioner to either make the motion to withdraw his guilty plea or

appointed substitute counsel to represent him on the motion to withdraw his plea. (Respondent's Lodged Document 8, at 4.) As indicated above, the trial court did not actually rule on petitioner's motion to withdraw because it was not made by his counsel, although the trial court indicated that such a motion had no merit.

At the outset, for the following reasons, the undersigned finds that petitioner's motion to withdraw the plea, had it been permitted, had no merit.

A guilty plea must be knowing, intelligent and voluntary. Brady v. United States, 397 U.S. 742, 748 (1970); Boykin v. Alabama, 395 U.S. 238, 242 (1969). "The voluntariness of [a petitioner's] guilty plea can be determined only by considering all of the relevant circumstances surrounding it." Brady, 397 U.S. at 749. In Blackledge v. Allison, 431 U.S. 63 (1977), the Supreme Court addressed the presumption of verity to be given the record of plea proceeding when the plea is subsequently subject to a collateral challenge. While noting that the defendant's representations at the time of his guilty plea are not "invariably insurmountable" when challenging the voluntariness of his plea, the Supreme Court stated that, nonetheless, the defendant's representations, as well as any findings made by the judge accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and that "[s]olemn declarations in open court carry a strong presumption of verity." Id., at 74; see also Marshall v. Lonberger, 459 U.S. 422, 437 (1983) (plea presumed valid in habeas proceeding when pleading defendant was represented by counsel). The record must affirmatively show that a criminal defendant's guilty plea is intelligent and voluntary. Boykin, 395 U.S. at 242-43.

Under Boykin, the record must reflect that a criminal defendant pleading guilty understands, and is voluntarily waiving, his rights to the privilege against compulsory self-incrimination, to trial by jury and to confront one's accusers. Boykin, 395 U.S. at 243. However, specific articulation of the Boykin rights "is not the sine qua non of a valid guilty plea." Wilkins v. Erickson, 505 F.2d 761, 763 (9th Cir. 1974). Rather, if the record demonstrates that a guilty plea is knowing and voluntary, "no particular ritual or showing on the

record is required." United States v. McWilliams, 730 F.2d 1218, 1223 (9th Cir. 1984).

In the instant case, as found by the California Court of Appeal, petitioner's motion to withdraw had no merit and would have been denied:

> Penal Code section 1018 allows a defendant, upon a showing of good cause, to withdraw his plea before judgment has been entered. Although this section refers to the withdrawal of guilty pleas, it also applies to no contest pleas. (E.g., People v. Brown (1986) 179 Cal.App.3d 207, 213.) Good cause may be established by a showing that defendant was operating under mistake, ignorance, or any other factor overcoming the exercise of his free judgment (such as clear inadvertence, fraud, or duress), and must be demonstrated by clear and convincing evidence. (People v. Weaver (2004) 118 Cal.App.4th 131, 145-146.) The court's decision whether to allow a defendant to withdraw a guilty or no contest plea is discretionary, and we will not disturb it absent a showing of the trial court has abused its discretion. (People v. Mickens (1995) 38 Cal.App.4th 1557, 1561.)
>
> ****
>
> Here, unlike in Brown, the trial court conducted a detailed inquiry into defendant's reasons for wanting to withdraw his plea and defense counsel's refusal to make the motion, and found there was no legal basis for withdrawing the plea, i.e., such a motion would be frivolous. The trial court also found that defendant's allegations against the victim, defendant's mother, and defense counsel, lacked credibility, i.e., making a motion based on defendant's allegations would compromise ethical standards. The record supports the trial court's findings.

(Respondent's Lodged Document 4, at 6, 8.)

For the reasons stated by the California Court of Appeal, the undersigned finds that petitioner's motion to withdraw his plea had no merit and was not in petitioner's best interest. The record indicates that petitioner's plea was knowing, voluntary and intelligent. Petitioner asserted no valid grounds to support his request to withdraw his plea.

Turning to the merits of petitioner's claims, petitioner first claims that the trial court should have allowed him to make the motion to withdraw his plea himself. However, petitioner did not ask to represent himself. Instead, during the in camera hearing, petitioner made a brief mention of asking if he could get his old lawyer back. (Respondent's Lodged Document

7, at 12.) There is no clearly established Supreme Court authority requiring a trial court to sua sponte conduct a Faretta[1] hearing when a defendant expresses dissatisfaction with his trial counsel's refusal to make a motion which has no merit and which is not in his best interests.

Although petitioner did not ask for appointment of substitute counsel, he did ask if he could get his old lawyer back. (Respondent's Lodged Document 7, at 12.) To the extent such a request could be construed as requesting appointment of substitute counsel, the trial court did not err in failing to appoint substitute counsel.

"A state has a duty to provide an indigent defendant with effective assistance of counsel through his first appeal." Hendricks v. Zenon, 993 F.2d 664, 669 (9th Cir. 1993). In California, a criminal defendant who is dissatisfied with court-appointed counsel must be permitted to state the reasons why the defendant believes the attorney should be replaced. See People v. Marsden, 2 Cal.3d 118, 123-24 (1970). When a defendant seeks to discharge counsel and substitute another attorney on the ground of inadequate representation, the court is required to allow the defendant to explain the basis for the motion and relate specific instances of the attorney's deficient performance. See id. Substitution is appropriate where the defendant can show a breakdown in the attorney-client relationship or "an actual conflict of interest. . . ." Wood v. Georgia, 450 U.S. 261, 273-74 (1981). Mere disagreement or friction between client and counsel is insufficient ground for substitution. See Morris v. Slappy, 461 U.S. 1, 13-14 (1983). Denial of a Marsden motion can only amount to a constitutional violation where there was a conflict between the defendant and counsel which prevented effective representation. See Schell v. Witek, 218 F.3d 1017, 1026 (9th Cir. 2000) (en banc).

Petitioner had no right to appointment of substitute counsel where the sole grounds of the request were that present counsel refused to make a frivolous motion that was not

---

[1] Faretta v. California, 422 U.S. 806 (1975); U.S. v. Robinson, 913 F.2d 712, 714 (9th Cir. 1990) (a defendant's waiver of his right to counsel must be knowing and intelligent; that is, the defendant must be aware of the nature of the charges against him, the possible penalties and the dangers of self-representation).

in his best interests. For this reason, the undersigned finds that the trial court did not err by failing to appoint substitute counsel to represent petitioner on his motion to withdraw his plea.

B. Alleged Ineffective Assistance of Counsel

*Legal Standard*

The test for demonstrating ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. Id. at 688. To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. Id. at 690. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. Id. "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice. Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.

In extraordinary cases, ineffective assistance of counsel claims are evaluated based on a fundamental fairness standard. Williams v. Taylor , 529 U.S. 362, 391-93 (2000) (citing Lockhart v. Fretwell, 506 U.S. 364 (1993)).

The Supreme Court has emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> In Strickland we said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."

> 466 U.S. at 689. Thus, even when a court is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a [petitioner] must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Ibid. (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)).
>
> For [petitioner] to succeed, however, he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. See Williams, supra, at 411.[2] Rather, he must show that the [ ]Court of Appeals applied Strickland to the facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-99 (2002).

*Analysis*

Petitioner argues that his trial counsel was ineffective for failing to move to withdraw his plea. As discussed above, a motion to withdraw the plea had no merit and was not in petitioner's best interests. For these reasons, the undersigned does not find that petitioner's counsel was ineffective in failing to make the motion to withdraw.

V. Conclusion

After conducting an AEDPA review, the undersigned denies petitioner's application for a writ of habeas corpus.

A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). For the reasons discussed above, the undersigned finds petitioner has not made a substantial showing of the denial of a constitutional right.

////

////

////

---

[2] This internal citation should be corrected to Williams v. Kaiser, 323 U.S. 471, 477 (1945).

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's application for a writ of habeas corpus is denied;

2. A certificate of appealability is not issued in this action.

DATED: January 11, 2011

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

loz56.157